IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, )
    Plaintiff, )
           v. )   CR. N0. 08-27 E
ROBERT LEE MARSH, JR., )   See Civil Action No. 1:09-cv-141 E
    Defendant. )

## OPINION & ORDER

Before the Court is Petitioner Robert Lee Marsh' Motion to Vacate under 28 U.S.C. § 2255 filed at Criminal No. 08-27 E (Doc. 29), and assigned Civil Action No. 09-141 E.

### I. Background

A federal grand jury returned a six-count indictment charging Mr. Marsh with possession and uttering counterfeit securities of an organization, in violation of 18 U.S.C. § 513(a). Mr. Marsh retained Philip B. Friedman, Esquire, to represent him in this matter.

On October 15, 2008, Mr. Marsh agreed to enter a plea of guilty as to count six of the indictment. Mr. Marsh's guilty plea was entered pursuant to a plea agreement that included a waiver of collateral rights provision. The Court conducted a plea colloquy with Mr. Marsh and accepted Mr. Marsh's guilty plea. (Transcript of Change of Plea, October 15, 2007, Doc.38.)

Based on an offense level of 13 and a criminal history of II, Mr. Marsh's guideline sentencing range was determined to be 15 to 21 months' imprisonment. On January 20, 2009, Mr. Marsh was sentenced within the guidelines range to 15 months' imprisonment, to be followed by 3 years' supervised release, and he was ordered to pay $58,137.65 in restitution. Counts one through 5 were dismissed. Defendant was permitted to self report to prison.

Mr. Marsh did not file a direct appeal to the United States Court of Appeals for the Third Circuit.

On June 15, 2009, Mr. Marsh timely filed a motion to vacate under section 2255, in which he raises numerous issues, many of which are incomprehensible.

## II. Standard of Review under 28 U.S.C. §2255

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916. Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

### *Evidentiary Hearing*

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

We find no need for an evidentiary hearing as the record conclusively establishes that the Mr. Marsh is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

## III. Discussion

Mr. Marsh has filed a motion to vacate despite agreeing in his plea agreement to waive the right to file such a motion. The government argues that Mr. Marsh's waiver be enforced, and his motion dismissed. Accordingly, we must first address whether Mr. Marsh's waiver of his right to file a motion pursuant to section 2255 is enforceable.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001), citing United States v. Mezzanatto, 513 U.S. 196, 201 (1995). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008), citing Khattak, 273 F.3d at 561.

We have "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine the "(1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." Mabry, 536 F.3d at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238 (citing Khattak, 273 F.3d at 563.)

### A. Knowing and Voluntary Nature of the Waiver

With regard to whether the waiver was knowing and voluntary we must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." Mabry, 536 F.3d at 239.

Pursuant to the plea agreement Mr. Marsh agreed to waive his right to take a direct appeal, except for limited reasons (Plea Agreement, ¶ A.7 (a), Doc. 19.) Specifically, the parties agreed that Mr. Marsh could appeal if the United States appeals from the sentence, or if the

sentence exceeds the statutory limits or unreasonably exceeds the guideline range. (Plea Agreement, ¶¶ A.7.(b) (1) & (2).) Mr. Marsh also agreed to waive his right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence. (Plea Agreement, ¶ A.7.) Mr. Marsh signed the plea agreement acknowledging that he understood the terms of the agreement, and his attorney witnessed his signature. (Plea Agreement, p. 5)  After a careful review, we find the terms of the plea agreement to be sufficient and clear with regard to the waiver of collateral rights.

The knowing and voluntary nature of Mr. Marsh's waiver was reinforced during the plea colloquy. We have reviewed the transcript of our plea colloquy . (Transcript of Plea Hearing, October 15, 2008, Doc.38). During the plea colloquy Mr. Marsh was determined to be competent to plead. (Id. at 4.) The Court explained to him what his rights would be if he went to trial. (Id. at 5-11.)  The six counts were summarized by the court for Mr. Marsh, after he acknowledged receiving the indictment and having discussed it with Mr. Friedman. (Id. at 7-8). The court also explained what the government would have to prove at trial with respect to each charge. (Id. at 10-11.)

We also explained the penalties Mr. Marsh would be subject to, including restitution (Id. at 11-12.) In addition, the terms of the Plea agreement that Mr. Marsh signed clearly stated that the government and Mr. Marsh agree that he was subject to a "term of supervised release of eight (8) years." (Plea Agreement, Gov. Ex. 1, at C.1.(c)).

The terms of the plea agreement were explained to Mr. Marsh. (Id. at 15-17.)  **In particular, it was explained to Mr. Marsh that the Plea Agreement he was entering into included the waiver of the right to file a motion to vacate sentence under 28 U.S.C. §2255** (Id. at 15-16) When Mr. Marsh indicated that he didn't understand some of the things explained by the assistant U.S. Attorney, he was given the opportunity to go off the record and have a private discussion with his attorney to clarify any questions he had. After the discussion with his attorney, the court asked Mr. Marsh, "So, you fully understand this now. Mr. Marsh?" to which

4

he responded, "Yes." (Id. at 18.)

The government also set forth in detail what it expected to prove had it went to trial that day. (Id. at 21-30.) The Court asked Mr. Marsh if it "was a fair and accurate statement of what happened," and Mr. Marsh stated, "Pretty much." (Id. at 29.) He clarified:

> I mean, the first check, I treated it, it was a fraudulent check. Went through fine. And the thirty-one thousand dollars, I never heard anything. It was a month later before I actually found out when the second two checks – went to cash them and they called me a week later, said the checks are no good. And I never did a scheme and try to do anything. I had a failing business and that's the biggest reason I went on it, to get the money and this third check.
>
> THE COURT: But you knew when you were transferring those checks that what you were doing was not legal?
>
> THE DEFENDANT: Yes. The last three, three checks that I got, I realized that it was wrong.

(Id. at 29-30)

We would add to our examination of the colloquy that we also asked Mr. Marsh if "any out-of-court promises, representations or agreements been made which require you to respond untruthfully to any of my questions? For instance, has anyone told you to tell me that no promise of leniency was made when, in fact, a promise of was so made? (Tr. of Change of Plea, at 19.) Mr. Marsh responded by answering, "No, sir." (Id. at 19.) We further asked:

> Do you understand that you may not at a later date after today claim that there were any promises, representations or agreements, understanding or threats made by any person that motivated or caused you to enter this plea other than those that you had the opportunity to tell me about here and now in open court?
>
> You understand that?
>
> THE DEFENDANT: Yes, sir.

(Id. at 19-20.)

Federal Rule of Criminal Procedure 11(b)(1)(N) requires that "[b]efore accepting a plea of guilty" the district court must "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." For purposes of the present analysis we find that Mr. Marsh's guilty plea was knowing and voluntary and that specifically, his waiver of his collateral rights

was knowing and voluntary.

## B. Miscarriage of Justice

We next address whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. We are to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242, 243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. However, the Third Circuit Court has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . . .'" Id. at 242-243, quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001).

In Shedrick, the Court found a miscarriage of justice and so did not enforce the collateral attack waiver set forth in the plea agreement. In Shedrick, defense counsel had failed to file an appeal that the defendant had instructed counsel to file concerning an issue that the defendant "had explicitly preserved in his plea agreement and colloquy: the propriety of [an] upward departure." Shedrick, 493 F.3d at 303. The Third Circuit Court explained,

> At its essence, Shedrick's argument is that, as a result of counsel's deficient performance, he (1) failed to understand the full effect of his guilty plea as it related to upward departures, and (2) failed to timely appeal the District Court's upward departure, which he was entitled to appeal under the express terms of the plea agreement waiver.

Shedrick, 493 F.3d at 298. Under these circumstances, the Court concluded that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented Shedrick from understanding his plea or from filing a direct plea agreement would result in a miscarriage of justice." Id.

In Quiles Gonzalez, the District Court read Shedrick to "suggest[] that the Third Circuit is likely willing to adopt the Seventh Circuit's ineffective-assistance-constituting-miscarriage-of-

6

justice reasoning in the context of collateral-attack waivers." Quiles Gonzalez, 2007 WL 2407288, *2 (referring to United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) ("ineffective assistance of counsel qualifies as a miscarriage of justice sufficient to overcome a waiver-of-appeal provision."). The District Court explained that it read Shedrick as holding that "a collateral-attack waiver should not be enforced if a habeas petitioner has alleged potentially viable ineffective-assistance-of-counsel claims, since refusing to consider and to remedy such claims, if true, would result in a miscarriage of justice." Id. at *3. The District Court later used more narrow language explaining that "under Shedrick, the Court should not enforce a collateral-attack waiver in the face of allegations that constitutionally deficient lawyering may have prejudiced the habeas petitioner, including allegations that ineffective assistance may have caused the petitioner to enter a guilty plea that he did not understand or fully appreciate." Id., citing Shedrick, 493 F.3d at 298. In not enforcing the petitioner's collateral attack waiver the Quiles Gonzalez Court "err[ed] on the side of caution" in light of the "absence of a more clear dictate" from the Third Circuit Court of Appeals. Id.

In Mabry, decided after Quiles Gonzalez the Third Circuit Court of Appeals has provided a more clear dictate. It is now clear that the mere allegation of ineffectiveness of counsel will not automatically invalidate a knowing and voluntary waiver of a collateral attack. Mabry, 536 F.3d at 243.

In Mabry the defendant filed a section 2255 petition claiming that his counsel was ineffective in failing to file an appeal even though Mabry had asked his counsel to file such an appeal. The Mabry Court explained that Shedrick held that it would be a miscarriage of justice to enforce a waiver of a collateral attack that would result in barring an appeal *expressly preserved in the plea agreement*, a circumstance not present in Mabry's case. Mabry, 536 F.3d at 243, construing Shedrick. All four issues Mabry wanted to raise on appeal were found to be "insubstantial and clearly encompassed by the broad waiver." Mabry, 536 F.3d at 243. In addition, Mabry did not allege that his "counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver." Mabry, 536 F.3d at 243. The Mabry Court thus

concluded that enforcement of the collateral attack waiver would not work a miscarriage of justice even though Mabry had raised the ineffectiveness of his counsel. Mabry, 536 F.3d at 243.

We likewise find that enforcing the waiver in this case does not result in a miscarriage of justice. The waiver in this case is broad and admits of no exceptions. It reads as follows:

> ROBERT LEE MARSH, JR. further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Plea Agreement, at A.7.)

Mr. Marsh's case is not similar to Shedrick. He did not expressly reserve the right to appeal any particular issue he has set forth in his petition. He asserts that he failed to take a direct appeal because "My lawyer told me it would be better to accept a plea with less time. He then had me sign a paper stating that I would not be able to appeal after signing the plea agreement." (Motion to Vacate p. 5, ¶ 11(d).)

Although Mr. Marsh's petition sets forth a multitude of incomprehensible arguments, we have carefully reviewed each of them and find that they are "insubstantial and clearly encompassed by the broad waiver." Mabry, 536 F.3d at 243. At best, Mr. Marsh argues that his counsel was ineffective in negotiating the plea agreement that contained the waiver, but this argument fails. Before pleading guilty to the charge in the Indictment, the provisions of the plea agreement, specifically the waiver provision, were read to Mr. Marsh in open court. He knowingly and voluntarily agreed to the waiver. We realize that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver;" nevertheless, having considered the relevant factors (the clarity, gravity, and character of the alleged error; the error's impact on the parties; and the extent of the defendant's acquiescence in the result, United States v. Khattak, 273 F.3d 557, 562-63 (3d Cir. 2001), we find that there is no basis to relieve Mr. Marsh from his waiver.

Having found that Mr. Marsh knowingly and voluntarily waived his rights to file a collateral attack of his sentence and conviction, and that enforcement of the waiver does not work a miscarriage of justice, we will deny Mr. Marsh's petition.

8

### C. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000). We find that jurists of reason would not find it debatable whether Mr. Marsh states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

### IV. Conclusion

Mr. Marsh's section 2255 motion will be denied, and a certificate of appealability will not be issued.

Accordingly, the following order is therefore entered.

AND NOW, to-wit, this __16th__ day of March, 2010, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 29), be and hereby is DENIED.

2. The court declines to issue a Certificate of Appealability.

                                                                      Maurice B. Cohill, Jr.
                                                                      United States District Court Judge

cc:    Robert Lee Marsh, Jr.
        counsel of record